ebc2sils kjc

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,              New York, N.Y.

4                 v.                        S2 12 Cr. 298(TPG)

5    ESFRAIN SILVA,

6                 Defendant.

7    ------------------------------x

8                                           November 12, 2014
                                            12:10 p.m.
9

10   Before:

11                  HON. THOMAS P. GRIESA,

12                                          District Judge

13

14
                          APPEARANCES
15
     PREET BHARARA
16        United States Attorney for the
          Southern District of New York
17   BY:  JASON A. MASIMORE
          Assistant United States Attorney
18

19   FEDERAL DEFENDERS OF NEW YORK
          Attorneys for Defendant
20   BY:  PEGGY CROSS-GOLDENBERG

21

22

23

24

25

ebc2sils kjc

 1          (Case called)

 2          MR. MASIMORE:  Good afternoon, your Honor.  Jason

 3   Masimore for the government.

 4          MS. CROSS-GOLDENBERG:  Good morning, your Honor.

 5   Federal Defenders of New York by Peggy Cross-Goldenberg for

 6   Mr. Silva.

 7          THE COURT:  You have gone over the presentence

 8   materials with your client, have you not, Ms. Cross-Goldenberg.

 9          MS. CROSS-GOLDENBERG:  Yes, your Honor.

10          THE COURT:  What would you like to add this morning?

11   Obviously the government's letter of yesterday is what it is,

12   and if you would like to comment on that or whatever would you

13   like to say, please go ahead.  Why don't you keep seated and

14   then the microphone will pick you up.

15          MS. CROSS-GOLDENBERG:  Thank you, your Honor.

16          Before I address the government's letter, I just have

17   one or, actually, two corrections to the presentence report

18   that the parties have noted.  The first is that on the cover

19   page, the year is wrong in the docket number and actually

20   throughout the presentence report it has the year 2013 instead

21   of 12.

22          THE COURT:  What date is wrong, please?

23          MS. CROSS-GOLDENBERG:  It has the Docket S2 13 Cr.

24   298, and it should be 12 Cr. 298.

25          THE COURT:  S2 12 Cr. 298, right?

ebc2sils kjc

1                    MS. CROSS-GOLDENBERG:  Yes, your Honor.

2                    THE COURT:  That is corrected.

3                    MS. CROSS-GOLDENBERG:  On page five of the presentence

4        report, paragraph 16, I think it is implied, but I would like

5        it to be just a little bit clearer, that Mr. Silva withdrew the

6        September 12 guilty plea and on August 19, he pled to Counts

7        One through Three of the superseding indictment.  So I guess

8        what I would insert in paragraph 16 in the last sentence after

9        August 19, 2014, I would say "Silva withdrew his previously --

10                   THE COURT:  Oh, yes, go ahead.  I interrupted you.  Go

11       ahead.

12                   MS. CROSS-GOLDENBERG:  I apologize.

13                   He withdrew his previously entered guilty plea and

14       pleaded guilty to Counts One through Thirteen of S2 12 Cr. 298.

15                   THE COURT:  Go a little slower.  He withdrew his --

16                   MS. CROSS-GOLDENBERG:  -- previously entered guilty

17       plea --

18                   THE COURT:  All right.  And?

19                   MS. CROSS-GOLDENBERG:  -- and pleaded guilty to counts

20       One through Thirteen of S2 12 Cr. 298.

21                   THE COURT:  He pleaded guilty to -- say that again?

22                   MS. CROSS-GOLDENBERG:  Counts One through Thirteen.

23                   THE COURT:  Did you say of?

24                   MS. CROSS-GOLDENBERG:  Of S2, which is the superseding

25       information 12 Cr. 298.

4

ebc2sils kjc

1          THE COURT:  Could the government be in touch with the

2    probation department and have these changes made?  These are

3    important changes.  Would you do that?

4          MR. MASIMORE:  Your Honor, we will work with the court

5    to make that happen.  I will speak to Mr. Beale and make sure

6    probation is notified.

7          THE COURT:  Okay.  Very good.

8          You go ahead with whatever else you would like to say.

9          MS. CROSS-GOLDENBERG:  Thank you, your Honor.

10          Just to double check that the court has received my

11    letter and the exhibits that were attached.

12          THE COURT:  Right.

13          MS. CROSS-GOLDENBERG:  So as the court knows, we have

14    requested that the court impose a sentence of 46 months.  We

15    think that is sufficient to effect the statutory sentencing

16    objectives here.  Anything greater than that, your Honor, I

17    think would be greater than necessary.

18          I note that the 46 months was the bottom of the

19    guideline range in the original plea agreement, and that's

20    where that number comes from.  But 46 months, your Honor, is a

21    long time.  It is almost four years in jail, and especially at

22    this point in Mr. Silva's life, you know, it is 46 months that

23    a lot of people his age spend starting, finishing, and

24    graduating from college, and instead he will be in jail.

25          The government's letter which I know the court has

ebc2sils kjc

1    received, which I found to be quite scathing in terms of a lot

2    of personal things related to Mr. Silva and his family, I do

3    think reinforces my point in terms of Mr. Silva's age and

4    maturity and sort of how he got here.

5             I know the government's letter repeatedly attacks

6    Mr. Silva's friends and family as bad character witnesses and

7    asks the court to disregard their opinions.  I find that very

8    unfortunate, because what they did in the video what, they

9    attempted to do at least, was give the court more insight into

10   Mr. Silva's life and what it has been like to be him and sort

11   of where he comes from.  Then weren't acting as character

12   witnesses in the sense of trying to persuade the court that

13   Mr. Silva has never done anything wrong or has no problems.

14   And I think Mr. Silva would be the first one and in fact in the

15   video he was quite straightforward that he has problems.  He

16   has made bad decisions.  He characterized them as dumb

17   decisions.  He has committed crimes.

18            So I am not asking the court to find that he is some

19   sort of angel who doesn't deserve to be punished here.  He

20   knows that he is going to be punished.  He knows that he will

21   be punished severely.

22            But the question is, and I don't think this is

23   addressed anywhere in the government's submission, is how do we

24   move forward from here?  You have a very young man.  He was 18

25   years old when he first was arrested related to this case.  He

ebc2sils kjc

1    was 19 years old at the MCC, the youngest person on his unit.

2            You know, the government attacks his mother, his

3    sister, his girlfriend and tells the court that he needs to be

4    removed from them for an extended period of time, and I just

5    find it sort of heartbreaking.  They are all that he has.  You

6    can't choose your family and certainly no family is perfect.

7    They all fight and there are arguments.  Mr. Silva's father

8    abandoned him at a very young age, as we go into in our letter

9    and as they discuss in the video.  He suffered the death of one

10   of his closest friends.  He certainly has made bad choices.  He

11   ran with the group that was involved in this conspiracy and it

12   was for no good reasons, and he understands that he needs to be

13   punished for that.  He has pled guilty and is here to accept

14   responsibility for his actions.

15           But what he is left with are these women who I should

16   point out to the court are here to support him today -- his

17   mother, his sister, his girl friend.  They appear in the video.

18   They wrote letters to the court.  Certainly if you have

19   questions for them, they are more than happy to answer them.

20   But this is a young man who was institutionalized from a very

21   young age.  He was ten years old when he was first put into a

22   juvenile home, and now he is 21.  And the question is, Where

23   does his life go from here?  What will he do?  How can he

24   emerge from prison in a way that avoids us ever being here

25   again?

ebc2sils kjc

1          And certainly a lengthy term of incarceration, he

2     understands, is the consequence of his actions; but to keep him

3     in jail until he is 30, you know, to rob him of an entire

4     decade of his young adulthood when what he really needs is, and

5     I think his girlfriend's mother summed this up as well as can

6     be summed up at the end of the video that, you know, he needs

7     an education, he needs therapy, maybe a psychologist, maybe

8     medication, and he needs help, but he need as chance to

9     become -- to have those things and to become a man.  And

10    keeping him in prison for 78 months or 97 months, as the

11    government requests, I think is simply too long, given all of

12    the circumstances of this case.

13         As I have said, he was very straightforward in the

14    video, I thought, where he explains that he makes bad

15    decisions, for example, smoking marijuana while he was on bail,

16    and he explains why did he it, right?  He was trying to numb

17    the pain that he was feeling and the stress that he was feeling

18    about this case.  And he realizes after the fact that it

19    doesn't take away any pain.  In fact, it adds pain.  So he is

20    in this cycle where his decisions are poor, they leave him

21    worse off, and the question is how can that cycle be broken?

22    And it is not by locking him up and throwing away the key and

23    removing him from the only support, however imperfect the

24    government may think it is, from the people who love him.

25         So I think, your Honor, in light of all of the facts

ebc2sils kjc

1   and circumstances of this case, a sentence of 46 months is

2   sufficient to affect the statutory sentencing objectives.  It

3   protects the public.  It gives him a chance for education and

4   rehabilitation.  It punishes him.  It promotes respect for the

5   law.  Anything longer than that we start to actually be

6   counterproductive, because it keeps him out of society and out

7   of a chance to emerge from prison with a degree and a chance to

8   start getting jobs while he is in his mid twenties as opposed

9   to when he is in his thirties and he has got no work

10  experience.

11          Your Honor, I would request that the court, whatever

12  sentence the court imposes that, it recommend to the Bureau of

13  Prisons that Mr. Silva participate in the residential drug and

14  alcohol treatment program.  I think we can all agree that that

15  is something that he will benefit from and it is something that

16  he has very much shown an interest in.

17          While he was at the MCC he did complete the short drug

18  program that they have there.  It is only 40 hours.  There is

19  no programming at the MDC, which is where he has been for the

20  past year, so he hasn't been able to take any programs there.

21  But I think, your Honor, we would request that the court impose

22  that so that he can get a start on at least dealing with his

23  substance abuse issues and his coping mechanism.  Then

24  hopefully, when he gets out, and he can continue to pursue his

25  education, he will already have a foot on the right track.

ebc2sils kjc

1          So we ask that the court impose a sentence of 46

2     months with a recommendation that he be permitted to

3     participate in the residential drug and alcohol program and

4     that he be housed in a facility as close to the New York City

5     area as possible.

6          Thank you, your Honor.

7          THE COURT:  Would your client wish to make a

8     statement?

9          MS. CROSS-GOLDENBERG:  Yes he does, your Honor.

10    Should he remain seated as well?

11         THE COURT:  Yes, please.

12         THE DEFENDANT:  How you doing, your Honor?  First, I

13    want to say sorry to my family.

14         THE COURT:  A little louder and a little slower.

15         THE DEFENDANT:  How you doing?  I want to say, first,

16    I want to say sorry to my family for putting them through the

17    shame, and I want to say sorry to anybody's property I caused

18    damage to.

19         I know that I messed up growing up and the area was

20    hard for me, you know, but I am sorry for everything I have

21    done.  I wish I could take everything back that I have done,

22    but it is too late now.

23         And I wish I could go back to a positive society now

24    and go back to school and get a job.

25         THE COURT:  Does the government have any statement?

ebc2sils kjc

1          MR. MASIMORE:  Yes, your Honor.  I think in the

2     typical case it is probably difficult for a court when

3     assessing a sentence to consider how much specific deterrence

4     is necessary and how likely is it that a particular defendant

5     is going to be a recidivist and therefore what type of sentence

6     to craft to achieve goals related to those two qualities about

7     a defendant.

8          I think in this case, the court doesn't have to really

9     predict anything because the defendant has shown the court what

10    the defendant is going to do.  And from the inception in this

11    case, from his arrest, from his being in prison for a bit, then

12    out on bail, then back in, throughout the entire time he has

13    demonstrated nothing but contempt for the process and contempt

14    for the court.

15         Not only did he commit more crimes after he was

16    arrested and after he spent some time in lockup, but he

17    continually violated prison regulations.  I think the letter,

18    much of the letter seems scathing in the sense that I was

19    reciting the facts of Mr. Silva's interaction with the court

20    since his arrest.  And I think those facts do indict him and

21    they do convict him and they show very clearly in this case in

22    the government's view that there is -- it is necessary that a

23    very significant sentence be imposed to deter Mr. Silva and to

24    lessen the risk of him being a recidivist.

25         I don't think, under the guidelines range that's

ebc2sils kjc

proposed here, he would get out when he is 30.  He is 21 years
old now.  He spent at least a year in.  The low end of the
guidelines range is six and a half years and if he successfully
completes an RDAP program, as defense counsel suggests, which I
think would probably be very appropriate for somebody with his
problems, he will be out still in his early to mid twenties,
not 30, which gives him plenty of time left.

          But, your Honor, in this case, particularly where
there are any number of codefendants in the Judge Carter case
for the related conduct, the overall burglary and drug
conspiracy case, watching what happens here, as well as members
of the community, there needs to be a punishment here in
relation to his behavior since he has been interacting with the
court.  I think the court is well aware of the crime and
certainly the serious nature and circumstances of the case in
that regard, but here what strikes me is his behavior since he
has been arrested, and I don't think I have seen a case where
somebody has had such a poor adjustment to being arrested and
being under the court's authority.

          The last thing I will say is there has been some
argument about him wanting to get an education and him want to
go get drug treatment.  But he has already demonstrated that he
is not it necessarily sincere in that regard, and what I am
referring to is his repeated absences and latenesses to the GED
program that he was given the opportunity by your Honor to take

ebc2sils kjc

1    advantage of.  I recall that one of the reasons your Honor

2    granted him bail notwithstanding his poor behavior was that he

3    was going to work on his GED, and he took that and he threw

4    that away by not going to the classes.  In addition, he didn't

5    support to substance abuse as he was required to do by Pretrial

6    Services.  So I think these words ring hollow and I think it is

7    very important here for the court to give a guidelines sentence

8    for these reasons.

9              THE COURT:  Let's come to the sentence.

10             This case has some truly exceptional features in the

11    acts of criminality.  To point out one illustration, he was

12    engaged in burglaries, probably not fully understood by the

13    court, but he was and there was a time he was released on bail

14    and he committed further burglaries while released on bail.

15             The government's letter, which I don't find challenged

16    as to its credibility, the government's letter indicates a

17    remarkable series of actions by Mr. Silva and disregard,

18    complete disregard for the fact that he was on bail, he was

19    being trusted.  That's why people are put on bail.  They are

20    put on bail to be trusted, and he could not be trusted.

21             The underlying crime is serious, involving burglaries.

22    The conclusion the court reaches is that there is no real basis

23    for the court to depart from or to fail to use the guidelines.

24    The guideline range is 78 to 97 months.

25             I am imposing a sentence of 84 months in prison on all

ebc2sils kjc

1    the counts, and those sentences are to be served concurrently.

2              Those prison sentences will be followed by supervised

3    release terms of three years, all to be served concurrently.

4              There will be a $100 special assessment for each

5    count, starting with the Count One, the conspiracy count, and

6    Counts Two through Thirteen, the substantive burglary counts.

7              And of course I think it is clear from the sentence

8    that I am imposing sentence on Counts One and Two through

9    Thirteen, that the 84-month sentences are on each of those

10   counts to be served concurrently.  The supervised release term

11   of three years is on each of those counts to be served

12   concurrently.

13             I assume there has been no waiver of a right of

14   appeal.  What about that?

15             MR. MASIMORE:  There is a waiver of the right to

16   appeal between the guidelines range; although, to the extent

17   the defendant retains any right to appeal for any reason,

18   defendant should be aware that the court would appoint an

19   attorney to file and prosecute such appeal if the defendant has

20   a right to do so.

21             THE COURT:  Under the sentence that I am imposing, is

22   there a waiver in the plea agreement?  Is there a waiver of a

23   right of appeal?

24             MR. MASIMORE:  Yes, your Honor.

25             THE COURT:  All right.

ebc2sils kjc

1      In connection with any other rights that he has, of

2  course he can pursue, and the court-appointed attorney will

3  function.

4      I think that concludes everything we need to do.  Is

5  there anything else?

6      MR. MASIMORE:  Your Honor, just a few housekeeping

7  matters.

8      I guess with respect to the forfeiture, the court

9  previously entered a preliminary order of forfeiture with

10  respect to $190,000.  That is 190,000 in U.S. currency as well

11  as the interest in some automobiles.  I think the court as a

12  technical matter needs to pronounce that as part of the

13  sentence now.

14      THE COURT:  Yes.  I so order.

15      MR. MASIMORE:  In addition, your Honor, and I think it

16  is implicit, but the court should, if it wants to, adopt the

17  presentence report.

18      THE COURT:  I adopt the findings of the presentence

19  report.

20      MR. MASIMORE:  And your Honor at this time the

21  government moves to dismiss any open counts.

22      THE COURT:  Motion granted.

23      MR. MASIMORE:  And lastly, the conditions of

24  supervised release are those that are set forth in the

25  presentence investigation report.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

ebc2sils kjc

1            THE COURT:  Of course.

2            MS. CROSS-GOLDENBERG:  Your Honor, from us, just with

3    respect to the drug and alcohol program and --

4            THE COURT:  Right.  The judgment will include a

5    recommendation for the drug and alcohol program.  Of course it

6    will.

7            MS. CROSS-GOLDENBERG:  Thank you, your Honor.  And

8    also that he be housed as close to New York City at possible.

9            THE COURT:  I will so recommend.

10           MS. CROSS-GOLDENBERG:  Thank you, your Honor.

11           THE COURT:  All right.  Thank you.  That concludes our

12   proceeding.

13           MR. MASIMORE:  Thank you, Judge.

14           MS. CROSS-GOLDENBERG:  And I don't know if the court

15   has another matter right after this, but can he just talk to

16   his family from the bar for a minute before he goes in the

17   back?

18           THE COURT:  Of course, of course, of course.

19           MS. CROSS-GOLDENBERG:  Thank you.

20                              - - -

21

22

23

24

25